IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

OCTAVIANO LOPEZ,

    *Plaintiff,*

vs.

Case No. 5:12-cv-4083-EFM-JPO

RESER'S FINE FOODS, INC.,

    *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff Octaviano Lopez brings this case against his former employer, Defendant Reser's Fine Foods, Inc., alleging that Defendant discriminated against him on the basis of age and ancestry. Plaintiff seeks relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Kansas Act Against Discrimination ("KAAD"). Defendant moves for summary judgment on the basis that Plaintiff cannot make a prima facie case of discrimination and that Plaintiff cannot show that Defendant's alleged legitimate, nondiscriminatory reason for its treatment of Plaintiff is pretextual. Because the Court finds that Plaintiff has not established a prima facie case of ancestry or age discrimination, the Court grants Defendant's Motion for Summary Judgment (Doc. 19).

# I. Factual and Procedural Background[1]

Plaintiff Octaviano Lopez is a fifty-nine year old Hispanic male. Defendant Reser's Fine Foods, Inc., is a manufacturer of fresh foods sold through wholesalers and grocers throughout the United States and Canada. Defendant operates twelve plant sites, five of which are located in Topeka, Kansas.

Plaintiff worked for Defendant at one of its Topeka plants on three separate occasions. His most recent employment with Defendant began on December 1, 2005, when he was fifty-two years old. From April 2008 to his resignation in July 2011, Plaintiff worked as a mixer on second shift in the spice room of Defendant's production department. Plaintiff voluntarily resigned from his employment with Defendant on July 28, 2011, during a mediation session between the parties conducted by the Kansas Human Rights Commission ("KHRC").

This case arises from a dispute between Plaintiff and another Hispanic employee of Defendant known as Guillermo Ayala. From November 2009, Ayala was Plaintiff's equivalent on first shift in the spice room at the plant. Plaintiff generally claims that the workers on first shift, including Ayala, did not complete their work, leaving second shift to complete their work and first shift's work as well. Specifically, Plaintiff asserts that the workers on first shift did not fill their spice buckets at the end of their shift and that they only filled the lighter, smaller duty bags leaving the heavier lifting for second shift. According to Plaintiff, when he spoke to first shift about finishing their work, first shift would complain to Defendant's human resources department ("HR") and his supervisor, John James, would "get on to him" for talking to first

---

[1] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

shift.[2] In addition, Plaintiff asserts that when he complained, HR told him that if he didn't like how he was being treated, he could quit. Plaintiff also asserts that James would yell at him using swear words and profanity when Ayala and the rest of first shift did not complete their work.

In July 2010, Ayala complained to Defendant's Human Resources Department about Plaintiff. Ayala claimed that Plaintiff was not filling the spice buckets at the end of Plaintiff's shift and that Plaintiff used insulting language towards him. Defendant asked Plaintiff to respond to this complaint, and Plaintiff claimed that it was not him but Ayala who was not filling the spice bucket as required and that he did not use insulting language towards Ayala. After reviewing Ayala's complaint and Plaintiff's response, Defendant determined that neither party was responsible for filling the spice buckets at the end of their shift as a matter of course but that both shifts were required to fill the spice buckets when they became empty.

In July 2011, Plaintiff complained to HR regarding another encounter with Ayala, alleging that Ayala snatched paperwork out of his hand during a shift change. As a result of this complaint, Defendant conducted an investigation by interviewing several employees. During the investigation, Defendant learned that Ayala had two encounters with a white female employee named Amanda Johnson. Defendant's interview notes state that on one occasion, Ayala "got upset" with Johnson about "switching scales" and Ayala "physically unplugged" her scale.[3] Johnson's perception was that Ayala was concerned about her being in the HR office too much and making complaints and trying to take over his job. Defendant's notes also reflect that "she [Johnson] is not sure if it is because of a gender issue or not." Defendant ultimately disciplined

---

[2] Lopez Dep., Doc. 20-3, p. 5.

[3] Def. Investigation Notes, Doc. 20-8, pp. 7-8.

Ayala for his actions against Plaintiff by giving him a final written warning and suspending him from work for three days.

Plaintiff's last day of work with Defendant was July 27, 2011. Plaintiff asserts that he resigned because he was suffering "humiliation" from his supervisor and HR and because his supervisor and HR always took Ayala's "side" over his.[4] Plaintiff also asserts that after he resigned, he was replaced by a white employee named James Scarsella. Scarsella testified that he thought management was trying to force Plaintiff to quit but that he also thought that management wanted him to quit too. He also testified that he believed that the pressure from management on him after Plaintiff resigned was less than what management placed on Plaintiff.

After exhausting his administrative remedies with the KHRC and the Equal Employment Opportunity Commission, Plaintiff filed a complaint in this Court for alleged violations of Title VII, the ADEA, and the KAAD. Plaintiff alleges that Defendant discriminated against him in his employment based on his Mexican ancestry and age to the extent he was constructively discharged. Defendant now moves for summary judgment on Plaintiff's claims.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[5] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[6] The movant bears the initial burden of proof, and must show the lack of evidence on an essential

---

[4] Lopez Dep., Doc. 26-2, pp. 20-21.

[5] Fed. R. Civ. P. 56(c).

[6] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

element of the claim.[7] If the movant carries this initial burden, the nonmovant that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[8] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[9] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[10]

### III.   Analysis

**A.   Plaintiff's Ancestry Discrimination Claim**

Title VII makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."[11] Discrimination may be proven through either direct evidence -- oral or written statements on the part of a defendant showing a discriminatory motivation); or indirect (i.e., circumstantial) evidence of discrimination.[12] Here, Plaintiff does not claim to have direct evidence of discrimination based on his ancestry. The Court must therefore determine if there is sufficient indirect evidence of discrimination for Plaintiff to survive summary judgment.

---

[7] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

[8] *Id.* (citing Fed. R. Civ. P. 56(e)).

[9] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[10] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[11] 42 U.S.C. § 2000e-2.

[12] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) (citations omitted).

In the absence of direct evidence, the courts apply the burden-shifting test set forth by the Supreme Court in *McDonnell-Douglas Corp. v. Green*.[13] Under this test, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of discrimination."[14] If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate nondiscriminatory reason for the adverse employment action.[15] If the defendant meets this burden, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is pretext.[16]

To set forth a prima facie case of discrimination, a plaintiff must establish that he (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position at issue, and (4) was treated less favorably than others not in the protected class.[17] For the purpose of its summary judgment motion, Defendant contends that Plaintiff does not meet two elements necessary to make a prima facie case. Specifically, Defendant contends that Plaintiff cannot show that he suffered an adverse employment action or that he was treated less favorably than others not in the protected class.

With respect to the adverse employment action, Defendant argues that Plaintiff did not suffer an adverse employment action in the form of being constructively discharged. Constructive discharge occurs "when an employer deliberately makes or allows the employee's

---

[13] 411 U.S. 792 (1973). In addition, the Court applies the same standards and burdens to Plaintiff's KAAD claim as it applies to Plaintiff's Title VII and ADEA claims. *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 n. 3 (10th Cir. 1997).

[14] *McDonnell-Douglas*, 411 U.S. at 802.

[15] *Id*.

[16] *Id.* at 804.

[17] *Luke v. Hosp. Shared Servs*. 513 F. App'x. 763, 765 (10th Cir. 2013) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)).

working conditions to become so intolerable that the employee has no other choice but to quit."[18] A plaintiff asserting constructive discharge has a "substantial" burden to show that "the working conditions imposed by the employer are not only tangible or adverse, but intolerable."[19] "If an employee resigns of [his] own free will, even as a result of the employer's actions, that employee will not be held to have been constructively discharged."[20] The Court evaluates the voluntariness of an employee's resignation under an objective standard, considering the totality of the circumstances and looking to whether the working conditions were so intolerable that a reasonable employee had no other choice but to quit.[21]

Plaintiff's issue with Defendant and his ultimate resignation arose from his ongoing dispute with Ayala regarding the division of work between first and second shift. Plaintiff asserts that he was constructively discharged because his supervisor would "yell" at him when first shift didn't complete their work and when Plaintiff spoke to Ayala about always leaving the more difficult, heavier work for second shift to complete. Plaintiff also asserts that he was constructively discharged because when he complained to HR about Ayala, HR ignored him and took no action. When Plaintiff complained to Defendant's HR department about its inaction, HR allegedly told Plaintiff that if he didn't like how he was treated he could leave. Plaintiff asserts that such treatment constituted discrimination by his supervisor and Defendant's HR department, and as a result, he was forced to resign.

---

[18] *MacKenzie v. City & Cnty. of Denver*, 414 F.3d 1266, 1281 (10th Cir. 2005).

[19] *EEOC v. PVNF, LLC*, 487 F.3d 790, 805 (10th Cir. 2007) (quoting *Tran v. Trs. Of State Colls. in Colo.*, 355 F.3d 1263, 1270-71 (10th Cir. 2004)).

[20] *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2002) (quoting *Jeffries v. Kansas*, 147 F.3d 1220, 1233 (10th Cir. 1998)).

[21] *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135-36 (10th Cir. 2004).

As an initial matter, Defendant argues that the alleged statements by Plaintiff's supervisor and Defendant's HR department are hearsay and thus inadmissible evidence that Plaintiff was constructively discharged. The Court disagrees. Under Federal Rule of Evidence 801(d)(2)(D), a statement is not hearsay if "[t]he statement is offered against an opposing party and: (D) was made by the party's agent or employee on a matter within the scope of that relationship while it existed." In the case of an employment dispute, "an employee's statements are not attributable to his employer as a party-opponent admission in an employment dispute unless the employee was 'involved in the decisionmaking [sic] process affecting the employment action' at issue.' "[22] Here, Plaintiff alleges that both James's and HR's statements and unwillingness to take action against Ayala resulted in his resignation. Therefore, James and HR were involved in the "decisionmaking [sic] process affecting the employment action' at issue,"[23] and their statements are admissible evidence.

However, even considering James's and HR's statements, Plaintiff has failed to meet his "substantial" burden to show that he was constructively discharged. Plaintiff's arguments in support of his assertion that he was constructively discharged are simply not supported by the record. Plaintiff claims that he was disciplined for speaking with first shift about not pulling their weight, but the record is devoid of any evidence showing that Defendant disciplined Plaintiff for such conduct. At most, the record shows that James and HR would "get on him" when he spoke to Ayala. Plaintiff also asserts that Defendant's HR department ignored his complaints about Ayala and took no action against Ayala, but the evidence shows that Plaintiff

---

[22] *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209 (10th Cir. 2010) (quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005)).

[23] *Id.*

only complained to HR on two occasions—one of which was actually initiated by Ayala—and that Defendant investigated both of those complaints. For the second complaint, Defendant disciplined Ayala by giving him a final written warning and a three day unpaid suspension. Finally, Plaintiff asserts that Defendant's failure to terminate Ayala in response to the second complaint violates its zero tolerance policy for workplace violence and shows that no reasonable person would expect any change in the environment. This argument, however, again ignores the fact that Defendant did follow its policy by issuing a final written warning to Ayala for his conduct and suspending him from work.

Plaintiff's remaining evidence of constructive discharge is the fact that his supervisor would yell at him for not completing his work or for speaking with first shift. While this evidence shows that Plaintiff's work environment certainly was not pleasant, this is not sufficient for a rational trier of fact to conclude that a reasonable employee in Plaintiff's position had no other choice but to quit.[24] Accordingly, the Court finds that Plaintiff has failed to present sufficient evidence for a jury to conclude that Defendant constructively discharged him.

Even if a reasonable employee in Plaintiff's position would have felt he had no choice but to quit, Plaintiff has not demonstrated that his resignation was caused by disparate treatment on account of his ancestry. Plaintiff has not come forward with any evidence of a single individual's ancestry. Plaintiff only asserts as fact the race of four individuals: (1) James, his supervisor, who is white; (2) Martinez, Defendant's general supervisor, who is Hispanic-Filipino; (3) Scarsella, his co-worker, who is white; and (4) Johnson, a first shift employee, who is white. Race, however, is not the same as ancestry, and because Defendant does not even

---

[24] *See Exum*, 389 F.3d at 1136 ("The question is not whether working conditions at the facility were difficult or unpleasant." (citations omitted)).

allege the ancestry of any other individual, he cannot prove Defendant discriminated against him on the basis of such. Moreover, even if the Court overlooks this fact, Plaintiff still can't demonstrate that Defendant discriminated against him on account of his race because, like Plaintiff, Ayala is also Hispanic. Thus, even if James or HR discriminated against Plaintiff in favor of Ayala, this discrimination could not have been on the basis of Plaintiff's race.

In sum, the Court finds that Plaintiff does not establish a prima facie case of ancestry discrimination. The Court therefore grants Defendant's motion for summary judgment on this claim. The Court need not consider Defendant's alleged legitimate, nondiscriminatory reason for its actions or evaluate whether those reasons were a pretext for unlawful discrimination.

**B.     Plaintiff's Age Discrimination Claim**

Plaintiff asserts that Defendant discriminated against him based on his age in violation of the ADEA. Under the ADEA, it is "unlawful for an employer . . . to discriminate . . . against any individual . . . [25]because of such individual's age."[26] A plaintiff may demonstrate age discrimination through either direct or indirect evidence.[27] Plaintiff does not contend that he has evidence of direct discrimination. Therefore, the Court must determine if Plaintiff has sufficient evidence of indirect discrimination for his claim to survive summary judgment.

Like Title VII cases, in the absence of direct evidence, the courts apply the *McDonnell-Douglas* burden shifting framework when considering a claim for age discrimination. To establish a prima facie case of disparate treatment on the basis of age a plaintiff must show that he "(1) is a member of the protected class, (2) suffered an adverse employment action, (3) was

---

[25]

[26]   29 U.S.C. § 623(a)(1).

[27]   *TWA, Inc. v. Thurston*, 469 U.S. 111, 121 (1984).

qualified for the position at issue, and (4) was treated less favorably than others not in the protected class."[28] To be considered a member of the applicable protected class, the plaintiff must establish that he is at least forty years old.[29] For purposes of its summary judgment motion, Defendant does not contest that Plaintiff is a member of a protected class or that Plaintiff was qualified for his position. Instead, Defendant contends that Plaintiff cannot show that he suffered an adverse employment action or that he was treated less favorably than others not in the protected class.

Like his Title VII claim, Plaintiff asserts that Defendant's conduct left him no choice but to resign such that he was constructively discharged. "Constructive discharge occurs when an employer makes or allows the employee's working conditions to become so intolerable that the employee has no other choice but to quit."[30] Plaintiff offers the same evidence of constructive discharge for his ADEA claim that he offered for his Title VII claim. Again, the Court finds that this evidence is not sufficient for a rational trier of fact to conclude that a reasonable employee in Plaintiff's position would have felt that he had no other choice but to quit. Therefore, Plaintiff has not established that he suffered an adverse employment action.

Furthermore, the Court finds that Plaintiff fails to demonstrate that he was treated less favorably than others not in the protected class. Plaintiff claims that he was treated less favorably than Ayala and Johnson. However, although Plaintiff asserts that both Ayala and Johnson are significantly younger than him, he offers no evidence as to their age. Plaintiff's only evidence of Ayala's age is that he estimates him to be at least ten years younger than him and

---

[28] *Id.*

[29] *Whittington v. Nordam Group Inc.*, 429 F.3d 986, 992 (10th Cir. 2005) (citations omitted).

[30] *MacKenzie*, 414 F.3d at 1281.

that Scarsella guesses that Ayala is in his thirties. These estimates are not evidence of age. With respect to Johnson, Plaintiff only asserts that she is "significantly" younger than he is but offers no evidence to support this assertion or as to her actual age. Accordingly, Plaintiff cannot prove that any workers were younger than him, much less that they were treated more favorably than him, on account of their age.

To conclude, Plaintiff has not raised a genuine issue of material fact that he suffered an adverse employment action or that he was treated less favorably than others in the protected class. Because Plaintiff has not set forth a prima facie case of age discrimination, Defendant is entitled to summary judgment on Plaintiff's ADEA claim. The Court need not consider Defendant's alleged legitimate nondiscriminatory reason for its actions or evaluate whether those reasons were a pretext for unlawful discrimination.

**IT IS ACCORDINGLY ORDERED** this 16th day of December, 2013, that Defendant's Motion for Summary Judgment (Doc. 19) is hereby **GRANTED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE